UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No:

CUSTOM CUTLERY, LLC a Florida Limited
Liability Company,

        Plaintiff,

vs.

LEIGH "AARON" CHURNICK, an individual,
KRISTA HARRELSON, an individual,

        Defendant.
_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, CUSTOM CUTLERY, LLC, sues Defendants, LEIGH "AARON" CHURNICK, an individual, and KRISTA HARRELSON, an individual, for false designation of origin and unfair competition under Section 43(a), 15 U.S.C. § 1125(a) of the Lanham Act and other causes of action under the laws of the State of Florida, for damages and injunctive relief, and states:

### The Parties

1. Plaintiff, CUSTOM CUTLERY, LLC ("Plaintiff"), is a Florida limited liability company with its principal place of business in Brevard County, Florida.

2. Defendant, LEIGH "AARON" CHURNICK ("CHURNICK"), is an individual who resides in Monroe County, Florida, and who is unlawfully competing with Plaintiff and deliberately creating consumer confusion in this judicial district.

3. Defendant, KRISTA HARRELSON ("HARRELSON"), is an individual who resides in Monroe County, Florida, and who sells knives and other cutlery throughout the United States, including in this judicial district. CHURNICK and HARRELSON are referred to collectively as "Defendants."

4. Defendants have induced, caused and/or are the moving forces behind the infringing activity set forth herein, and they have a financial interest in and/or actually participated in this infringing activity.

## Jurisdiction and Venue

5. Jurisdiction is proper in this Court because this is an action for false designation of origin and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and Florida common law. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338, and over the state law claims under 28 U.S.C. § 1367(a).

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the acts or omissions giving rise to this claim occurred, in this judicial district and Defendants reside in this judicial district.

## The Rhineland Knives

7. In 2012, Plaintiff first began designing cutlery with a distinct and unique design, and shortly thereafter founded the Rhineland Cutlery brand of knives showcasing this distinct and unique design.

8. Plaintiff manufactures, distributes and sells cutlery, including knife sets, individual knives, and knife storage under the Rhineland Cutlery brand (collectively referred to herein as "Rhineland Knives"), throughout the United States, including Florida and in this judicial district.

9. Rhineland Knives bear its distinctive trademark and trade dress, which include: a) completely rounded rosewood-colored handle with an oval silver inlay; b) silver tip at the end of the handle; and c) packaging incorporating a white outline of a knife with the unique handle design above double lines divided by five stars on a black background, creating a distinctive visual impression. Photographs depicting the Rhineland Knives are attached hereto as **Composite Exhibit A**.

10. The elements of the Rhineland trade dress and mark are inherently distinctive and nonfunctional, and identify Plaintiff as the exclusive source of its quality and proprietary Rhineland Knives.

11. Plaintiff first began selling Rhineland Knives in 2013, throughout all of Florida and the United States.

12. Plaintiff has continuously used the Rhineland Knives trade dress and mark in connection with advertising, marketing, promoting, and selling Rhineland Knives.

13. Plaintiff is now one of the top ten knife companies in the United States.

14. During its first full year of sales, Plaintiff did $2.1 million in wholesale business from Rhineland Knives.

15. During its second year of sales, Plaintiff did over $3 million in wholesale business from Rhineland Knives.

16. Plaintiff has invested substantial sums in advertising and marketing Rhineland Knives.

17. Plaintiff advertises, markets, and sells Rhineland Knives through its website, www.rhinelandcutlery.com, as well as on social medial, through promotional brochures and

flyers, through its authorized distributors, and personal outreach at hundreds of trade shows every year.

18.     Rhineland Knives have also been sold at major national retail outlets such as Costco and Sam's Club, both of which operate stores throughout Florida and the United States.

19.     Various newspapers and magazines have also written articles about Rhineland Knives.

20.     Plaintiff's customers identify Rhineland Knives from its trade dress and mark.

21.     The Rhineland Knives mark and trade dress have become known and have developed a secondary meaning in the United States, including Florida, as indicating the source of, and are relied upon and recognized by the public as symbols of, assurance as to the quality of Rhineland Knives.

22.     Plaintiff has enjoyed exclusive and peaceful use of its mark and trade dress in Florida since it started selling the Rhineland Knives in October 2013.

23.     This peaceful enjoyment came to an abrupt end in or about June 2016, when Defendants unlawfully began competing with Plaintiff.

### Defendants' Unfair and Deceptive Conduct

24.     Defendants manufacture, advertise, promote and sell cutlery, including knife sets, individual knives, and knife storage, that are a confusingly similar and colorable imitation of the Rhineland Knives (the "Infringing Products"). Photographs depicting the Infringing Products are attached hereto as **Exhibit B**.

25.     In recent months, Defendants have engaged in direct and deliberate acts to infringe on and interfere with Plaintiff's business and goodwill in an effort to financially harm Plaintiff and drive it out of business. This unlawful conduct includes, but is not limited to:

a) selling or offering to sell the Infringing Products in Florida and throughout the United States by using the Rhineland Knives' mark and/or trade dress to trick consumers into thinking the Infringing Products are actually Rhineland Knives;

b) selling or offering to sell the Infringing Products to wholesale customers or distributors using the Rhineland Knives mark and/or trade dress;

c) contacting Plaintiff's distributors and offering them a "bait and switch" scheme, where distributors would offer to sell Rhineland Knives, but then actually sell the Infringing Products;

d) threatening to sue Plaintiff's distributors in Miami and elsewhere if they do not cease doing business with Plaintiff and instead do business with Defendants;

e) threatening to sue trade show promoters if they continue to do business with Plaintiff; and,

f) making false allegations that Defendants are using Plaintiff's original patent-holding manufacturer to manufacture the Infringing Products.

26. To manufacture the Infringing Products, Defendants retained the same trading company that sourced the manufacturer of Rhineland Knives. Defendants requested this trading company to copy the features of the Rhineland Knives for the Infringing Products.

27. Defendants intentionally copied the Rhineland Knives to derive profit from trading on Plaintiff's goodwill and the goodwill of the Rhineland Knives.

28. However, the Infringing Products are lower-quality than the Rhineland Knives and Defendants do not conduct any quality inspection of the Infringing Products.

29. Defendants' imitation of the Rhineland Knives is without authorization or authority from Plaintiff.

30. On or about August 25, 2016, CHURNICK told Plaintiff's distributors that Defendants currently had in-stock approximately 2,700 Infringing Products in their possession.

31. On or about August 31, 2016, CHURNICK told Plaintiff's distributors that Defendants expected another shipment of thousands of Infringing Products to arrive from Defendants' manufacturer, in an effort to flood the market with the Infringing Products.

32. Defendants also sell the Infringing Products through the same channels and to the same targeted purchasers in the United States, including in this judicial district, as Plaintiff.

33. Consumers are likely to be confused by the Infringing Products and to mistake them for Rhineland Knives.

34. In fact, one of Plaintiff's distributors saw HARRELSON, with CHURNICK's knowledge, selling the Infringing Products on the online auction website eBay.

35. The distributor mistakenly thought that Defendants were new suppliers for the Rhineland Knives.

36. The distributor's confusion caused the distributor to threaten that he and another distributor would break all ties with Plaintiff.

37. The confusion will inevitably weaken Plaintiff's position with its distributors and customers.

38. The confusion Defendants are creating is deliberate and it is continuous.

39. Defendants' actions will cause Plaintiff to lose control over its own business reputation since its Rhineland Knives are being confused for Defendants' inferior Infringing Products.

40. This is a grievous injury that can only be remedied by eliminating the confusion.

41. It is unlikely that Plaintiff will simply be able to recapture its relationship with its customers or distributors if Defendants are allowed to continue to sell the Infringing Products.

42. Defendants are unfairly benefiting and profiting from Plaintiff's longstanding exposure and excellent reputation in the market. Defendants' actions have harmed, and will continue to harm, Plaintiff unless they are enjoined.

43. Further, injunctive relief would stop Plaintiff from losing goodwill and reputation, which loss is hard to measure in money damages.

### Defendant Churnick's Tortious Interference with Plaintiff's Distributors

44. Plaintiff enters into binding contracts with its authorized distributors who purchase Rhineland Knives from Plaintiff. The distributors then sell Rhineland Knives to retailers and direct to consumers throughout Florida and the United States.

45. Plaintiff has contracts with distributors to sell Rhineland Knives supplied by Plaintiff throughout the United States.

46. On multiple occasions, CHURNICK intentionally sought out and contacted various distributors of Rhineland Knives, and tried to convince the distributors to cease doing business with Plaintiff and instead purchase the Infringing Products from Defendants.

47. CHURNICK would send a price list to Plaintiff's distributors for the Infringing Knives, but use the same model numbers as the Rhineland Knives.

48. CHURNICK also told Plaintiff's distributors that they could employ a "bait and switch" scheme and imply that they were offering to sell the Rhineland Knives to consumers, but then actually sell the lower-quality Infringing Products to the consumer.

49. CHURNICK has also used threats and intimidation in an effort to interfere with Plaintiff's distributors.

50. For example, CHURNICK has told at least one of Plaintiff's distributors that he had two options: to buy the Infringing Products from Defendants at a 25% discount or to be named in a lawsuit, costing the distributor thousands of dollars in attorney's fees.

51. CHURNICK has also told distributors who were reluctant to do business with Defendants that Defendants would interfere with Plaintiff's manufacturing of the Rhineland Knives, thereby straining Plaintiff's inventory and sinking the distributors' income.

52. CHURNICK has also told distributors that it would further sink their income from Rhineland Knives by selling the Infringing Product at a price drastically lower than the price for Rhineland Knives at various trade shows normally attended by Plaintiff or Plaintiff's distributors.

53. CHURNICK was aware, or should have been aware, that Plaintiff has distribution contracts or prior business relationships with these distributors, which is why, on information and belief, he intentionally sought out these specific persons.

54. CHURNICK was also aware, or should have been aware, that Plaintiff maintains ongoing contractual business relationships with Plaintiff's distributors, where distributors purchase Rhineland Knives from Plaintiff and then sell Rhineland Knives to retailers or directly to consumers.

55. CHURNICK specifically intended to interfere with Plaintiff's business relationships with its distributors.

**Defendant Churnick's Interference with Advantageous Trade Show Relationships**

56. Plaintiff has also developed very close relationships with trade show promoters. Rhineland Knives are marketed directly through brochures and on-site booths at trade shows.

The Rhineland Knives are sold at hundreds of trade shows every year and seen by hundreds of thousands of people each year.

57. Because of the large presence at trade shows, trade show organizations are integral to Plaintiff's business selling Rhineland Knives.

58. For example, Plaintiff enjoyed a relationship with the Miami International Boat Show ("Boat Show"), a weekend-long expo event held annually by the National Marine Manufacturers Association ("NMMA"). Over 100,000 people attend this Boat Show each year in Miami-Dade County.

59. In addition to displaying the latest boat models, the Boat Show offers exhibit space for select retailers to market, promote, advertise, and sell their marine-related products, accessories and gifts to attendees.

60. Plaintiff was an exhibitor at the 2013 through 2016 Miami International Boat Show, one of the largest expos Plaintiff attends each year.

61. CHURNICK contacted a Boat Show promoter directly because he was aware that Plaintiff has an advantageous business relationship with NMMA and Boat Show.

62. CHURNICK intentionally and tortuously interfered with that relationship by, among other things, threatening and intimidating the Boat Show promoter and/or NMMA with a baseless lawsuit if they did not cease doing business with Plaintiff.

63. In light of these false statements made by CHURNICK, it is uncertain whether the NMMA and/or the Boat Show will maintain its relationship with Plaintiff, which would cause Plaintiff substantial damages.

64. Based on the all of the foregoing, it is apparent that Defendants have engaged in a course of conduct to deliberately and willfully infringe the Rhineland Trade Dress and to trade

upon the substantial and valuable goodwill that Plaintiff has developed and earned as the exclusive source of high-quality products and services related to its Rhineland Knives.

65. Plaintiff is the senior user of the mark in Florida and throughout the United States and Defendants are trademark and trade dress infringers who should be enjoined from the market.

66. Defendants' actions continue to be likely to cause confusion in the marketplace, which continues to injure Plaintiff.

67. Defendants are infringers who should be enjoined.

68. Defendants are unfairly benefiting and profiting from Plaintiff's longstanding exposure and excellent reputation in the market.  Defendants' actions have harmed, and will continue to harm, Plaintiff unless they are enjoined.

## COUNT I
## UNFAIR COMPETITION AND FALSE DESIGNATION
## UNDER LANHAM ACT (15 U.S.C. §1125(a))
## (all Defendants)

69. Plaintiff realleges paragraphs 1-68 as though set forth in full herein.

70. As is apparent from a comparison of the items depicted in the photographs attached hereto as Exhibits A and B, Defendants have intentionally copied and misappropriated distinctive elements of the Rhineland Knives mark and trade dress by promoting and selling their confusingly similar Infringing Products.

71. Through Defendants' continued use and incorporation of Plaintiff's mark and trade dress or confusingly similar imitations thereof, Defendants are deliberately seeking to trade off the goodwill and reputation of Plaintiff and the Rhineland Knives, and gain a competitive advantage for their Infringing Products by associating their inferior products with the Rhineland Knives and passing off their Infringing Products as those of Plaintiff. In the alternative,

Defendants have actually copied the Rhineland Knives and are passing those off as Defendants' own products.

72. Defendants' acts, as described above, are likely to cause confusion, mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiff or as to the origin, sponsorship, or approval of Defendants' goods by Plaintiff, and thus constitute unfair competition, false designation of origin, accomplish palming off of Defendants' products as those of Plaintiff and are likely to cause Plaintiff to lose its significance as indicators of origin.

73. Likewise, Defendants have used Plaintiff's mark and/or trade dress in connection with false and misleading descriptions or representations of fact in commercial advertising or promotion, thereby misrepresenting the nature, characteristics, or qualities of their goods and affecting interstate commerce.

74. It is Defendants' intent to cause, Defendants have caused, and are likely to continue to cause, reasonable confusion as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' products by Plaintiff, and are likely to continue to do so unless Defendants' actions are enjoined by the Court.

75. Defendants' acts of infringement have caused and will continue to cause irreparable harm and damage to Plaintiff, leaving Plaintiff will no adequate remedy at law. Such damages include loss of goodwill, reputation, lost sales, and other damages.

**COUNT II**
**UNFAIR COMPETITION, MISAPPROPRIATION, AND INFRINGEMENT**
**(Florida Common Law)**

76. Plaintiff realleges paragraphs 1-68 as though set forth in full herein.

77. As is apparent from a comparison of the items depicted in the photograph attached hereto as Exhibits A and B, Defendants have copied and misappropriated distinctive elements of Plaintiff's mark and trade dress.

78. Plaintiff was first to use its mark and trade dress throughout the United States, including the State of Florida.

79. Plaintiff has spent considerable time and money to design, create, develop, manufacture, distribute, and sell the Rhineland Knives, as well as the marketing and promotional material related thereto.

80. Plaintiff has also spent considerable time and money developing a successful market for the Rhineland Knives and has developed a reputation for high quality throughout the United States, including the State of Florida.

81. Plaintiff's mark and trade dress are sufficiently distinct to warrant protection.

82. Defendants are using a confusingly similar, if not identical trademark and trade dress in competition with Plaintiff and in the same trade areas and geographic areas in which Plaintiff has already established its mark and trade dress.

83. Through the Defendants' continued and elicit use or incorporation of the Plaintiff's proprietary and protected trademark and trade dress, or confusingly similar product and design, Defendants have continued to falsely designate the origin of Defendants' Infringing Products and created a false description or representation of the inferior counterfeit products Defendants seek to pass off as those of Plaintiff.

84. Through their advertising and representations, Defendants have continued to misrepresent to prospective purchasers that the Infringing Products are produced, sponsored, authorized, affiliated, or somehow endorsed by Plaintiff. In the alternative, the Defendant has

actually copied Plaintiff's goods, materials and products and are passing those off as Defendant's own products.

85. As a proximate result of Defendants' conduct, Plaintiff has been damaged. Such damages include damage to Plaintiff's goodwill and reputation, and other damages, including lost sales due to the deceptive practices engaged in by Defendants, the dilution of Plaintiff's marks, and the dilution of the market for the Plaintiff's products.

86. Defendants' calculated, deceptive, and fraudulent actions of unfair competition and infringement, as described above, are likely to cause and have caused confusion and substantial injury to Plaintiff and the public.

87. As a direct and proximate result of Defendants' infringing activities, as described above, Plaintiff has suffered and will continue to suffer irreparable injury and damages, including lost profits, with no adequate remedy at law.

88. It is Defendants' intent to cause, Defendants have caused, and are likely to continue to cause, reasonable confusion as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' products by Plaintiff, and are likely to continue to do so unless Defendants' actions are enjoined by the Court.

## COUNT III
## UNJUST ENRICHMENT
### (Florida Common Law)

89. Plaintiff realleges paragraphs 1-68 as though set forth in full herein.

90. This is a claim for unjust enrichment under Florida law.

91. Plaintiff conferred substantial benefits on Defendants, including, but not limited to, the goodwill and reputation in the Florida area for Rhineland Knives arising out of the

public's confusion and misplaced association of Defendants with Plaintiff and/or Rhineland Knives.

92. Defendants received this benefit without paying for it.

93. Defendants voluntarily accepted and retained these benefits under circumstances that it would be inequitable to allow Defendants to retain them without compensation to Plaintiff.

94. Defendants' actions have caused Plaintiff damages, for which there is no adequate remedy at law.

## COUNT IV
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS
## (against CHURNICK)

95. Plaintiff re-alleges and reasserts paragraphs 1-68 above as if set forth fully herein.

96. Plaintiff has beneficial and ongoing relationships with its authorized distributors for the purchase and sale of Rhineland Knives.

97. As set forth above, CHURNICK intentionally, maliciously, unlawfully and without justification interfered with these contractual and advantageous business relationships between Plaintiff and its distributors, by:

(a) encouraging distributors to cease purchasing Rhineland Knives from Plaintiff and instead buy the Infringing Products from Defendants, and then use a "bait and switch" scheme;

(b) stating scandalous, false, and highly offensive statements about Plaintiff's products or business methods; and,

(c) using threats and intimidation of legal action against distributors if they continued to do business with Plaintiff.

98. Plaintiff has beneficial and ongoing relationships with trade show organizations.

99. As set forth above, CHURNICK intentionally, maliciously, unlawfully and without justification interfered with Plaintiff's advantageous business relationships with trade show organizations, including the NMMA, by:

   (a) stating scandalous, false, and highly offensive statements about Plaintiff's products or business methods; and

   (b) using threats and intimidation of legal action against trade show organizations if they continued to do business with Plaintiff and/or its distributors.

100. CHURNICK was aware, or should have been aware, that these business relationships existed.

101. CHURNICK's actions may reasonably induce or cause distributors or trade show organizations to not continue to conduct business with Plaintiff.

102. Plaintiff has been damaged as a result of CHURNICK's interference with its distributors and trade show business relationships.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff, CUSTOM CUTLERY, LLC, respectfully requests that this Court enter a judgment in its favor and against Defendants, LEIGH "AARON" CHURNICK and KRISTA HARRELSON, on all counts as pled herein, and award the following relief:

A. Finding that Defendants have violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and awarding damages and an accounting for profits under 15 U.S.C. § 1117, as well as treble damages for Defendants' willful infringement;

B. Declaring that Defendants have unfairly competed with Plaintiff, tortiously interfered with Plaintiff's contracts and business relationships, and been unjustly enriched under Florida law, and awarding damages and disgorgement of profits under and Florida law;

    C.    Preliminarily and permanently enjoining Defendants, as well as all others in concert or participation with them, pursuant to 15 U.S.C. § 1116, from:

    1) using, advertising, promoting, supplying, distributing, accepting shipments of, or offering the Infringing Products; and

    2) engaging in any other activities constituting unfair competition with Plaintiff and its Rhineland Knives.

    D.    Ordering that all Infringing Products and related labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Defendants be delivered up and destroyed pursuant to 15 U.S.C. § 1118;

    E.    Requiring Defendants to file with this Court and serve on Plaintiff within thirty (30) days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

    F.    Directing such other relief as the Court may deem appropriate to prevent consumers and the public from deriving any erroneous impression that any product or service at issue in this action that has been advertised, marketed, promoted, supplied, distributed, offered for sale, or sold by Defendants, has been authorized or sponsored by Plaintiff, or is related in any way with Plaintiff and/or the Rhineland Knives;

    G.    Awarding Plaintiff pre-judgment interest on any monetary award made part of the judgment against Defendants;

    H.    Awarding Plaintiff costs of suit and reasonable attorney's fees pursuant to 15 U.S.C. § 1117; and

    I.    Awarding Plaintiff such other and further relief that this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury in this matter.

Dated this 26th day of October, 2016.

*/s/ Nicolette C. Vilmos* _____
**BROAD AND CASSEL**
**Nicolette C. Vilmos, P.L.**
Florida Bar No. 469051
Email: *Nvilmos@broadandcassel.com*
**Lacey D. Corona, Esq.**
Florida Bar No. 0066454
Primary Email: *lcorona@broadandcassel.com*
390 North Orange Avenue, Suite 1400
Orlando, FL 32801
Tel  407.839.4289; Fax  407.246.5614
**Attorneys for Plaintiff**

EXHIBIT "A"







EXHIBIT A

EXHIBIT "B"





EXHIBIT B